J-S01010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARQUALE JAMAL SMITH | : | |
| | : | |
| Appellant | : | No. 1030 MDA 2016 |
| | : | |

Appeal from the PCRA Order June 1, 2016
In the Court of Common Pleas of Snyder County
Criminal Division at No(s): CP-55-CR-0000164-2013

BEFORE:   GANTMAN, P.J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JANUARY 30, 2017**

Appellant, Marquale Jamal Smith, appeals from the order entered in the Snyder County Court of Common Pleas, which denied his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

This Court previously set forth the relevant facts of this case as follows:

> Appellant and [V]ictim were formerly in a relationship and had a child together.  [V]ictim would bring their child to Appellant's mother's home, where Appellant lived, while [V]ictim worked.  She would then return to his house to pick up the child after her shift was over.  On May 13, 2013, [V]ictim arrived at Appellant's home at approximately 4:00 p.m. to pick up her child.  Soon after entering the home, Appellant took her cell phone and keys.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

He accused [V]ictim of having a sexual relationship with another man, and was attempting to check her phone for text messages or other proof that she was seeing someone else.

[V]ictim's child, who was approximately six months old at the time, awoke. [V]ictim then went into Appellant's bedroom to breastfeed. She sat on Appellant's bed with her clothes on and lifted her shirt so that the baby could have access to her breasts. Appellant then entered and began to call [V]ictim a slut or a whore. At that point, he began to remove her pants. [V]ictim told Appellant to stop, but he removed [V]ictim's pants. She repeated that she did not want to have sex. He then stated that if other men could "get some, then he should, too." Appellant then penetrated [V]ictim's vagina with his penis. [V]ictim continued to tell Appellant to stop, and the baby began to cry as did [V]ictim. Shortly thereafter, Appellant exited the room and [V]ictim dressed herself and took the baby into the living room. She asked for her keys so that she could leave.

Appellant continued to accuse [V]ictim of being in a relationship with another man from her work and took the baby from her. He then told [V]ictim that she could not leave with the child unless she had sex with him again. After one-half-hour of discussing [V]ictim having sex with Appellant before she could leave, [V]ictim finally acquiesced. According to her, she only engaged in intercourse with Appellant so she could take her baby and leave.

After the second assault, Appellant refused to let [V]ictim immediately leave with the child. He then threw [V]ictim's cell phone against a wall, breaking it. Finally, Appellant returned [V]ictim's car keys. Upon leaving, [V]ictim went with her child and traveled immediately to the home of the closest person she knew in the area, which was her former boyfriend. She told him what occurred, and then went home to pick up her brother to take him to work for a nightshift at 10:00 p.m. After dropping off her brother, she went to the Pennsylvania State Police and reported the incident. She then went to a hospital for testing and informed a nurse of the assaults.

> The following morning, police arrested Appellant while he was seated on the front porch of [V]ictim's home. He admitted to having sexual relations with [V]ictim the night before, but maintained that the sex was consensual. According to him, [V]ictim stripped down naked on his bed while breastfeeding, and the child then fell asleep before the two had sex the first time. In addition, he indicated that the second time they had sexual relations she instigated it and began having oral sex with him.

*Commonwealth v. Smith*, No. 1033 MDA 2014, unpublished memorandum at 1-3 (Pa.Super. filed March 31, 2015) (internal citation omitted).

Procedurally, a jury convicted Appellant on February 18, 2014, of sexual assault, indecent assault, and unlawful restraint. The court also convicted Appellant of criminal mischief. On May 23, 2014, the court sentenced Appellant to an aggregate term of three (3) to six (6) years' imprisonment. This Court affirmed the judgment of sentence on March 31, 2015. *See id.* Appellant did not seek further direct review. On March 4, 2016, Appellant timely filed a counseled PCRA petition raising claims of ineffective assistance of counsel. The court held a PCRA hearing on June 1, 2016, at the conclusion of which the court denied PCRA relief. Appellant timely filed a notice of appeal on June 23, 2016. On June 27, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); Appellant timely complied.

Appellant raises two issues for our review:

[WHETHER] THE [PCRA] COURT ERRED IN DENYING THE [PCRA] PETITION WHERE THE [PCRA] COURT FOUND NO PREJUDICE TO [APPELLANT] IN THE LACK OF

PREPARATION FOR TESTIFYING AT TRIAL WHERE [APPELLANT] BELIEVED THAT HE WAS NOT GOING TO BE TESTIFYING AND THE LACK OF PREPARATION AFFECTED HIS DEMEANOR AND TESTIMONY ON THE STAND[?]

[WHETHER] THE [PCRA] COURT ERRED IN DENYING THE [PCRA] PETITION WHERE THE [PCRA] COURT FOUND NO PREJUDICE TO [APPELLANT] WHEN TRIAL COUNSEL FAILED TO BRING OUT EVIDENCE OF [APPELLANT'S] INTENTION TO SEEK CUSTODY OF THE MINOR CHILD OF [APPELLANT] AND VICTIM WHERE SUCH TESTIMONY WOULD HAVE ESTABLISHED A MOTIVE FOR VICTIM TO TESTIFY FALSELY[?]

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Carr*, 768 A.2d 1164 (Pa.Super. 2001). If the record supports a post-conviction court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297 (2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael T. Hudock, we conclude Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions

presented. (*See* PCRA Court Opinion, filed August 4, 2016, at 2-7) (finding:

**(1)** Appellant's testimony, that trial counsel failed to discuss with him possibility of testifying at trial or prepare Appellant to testify, was not credible; Appellant's mother admitted she attended meetings with Appellant and trial counsel, during which counsel, Appellant, and Appellant's mother discussed possibility of Appellant testifying at trial; Appellant's mother insisted she did not want Appellant to testify; trial counsel said he discussed with Appellant general parameters of testifying, and stated it was ultimately Appellant's decision whether to testify; court credited counsel's testimony that he and Appellant had pre-trial discussions concerning whether Appellant should testify and how Appellant should testify; counsel and Appellant made final decision that Appellant would testify at close of Commonwealth's presentation of testimony/evidence;[2] Appellant's ineffectiveness claim lacks arguable merit and, in any event, Appellant demonstrated no prejudice; **(2)** trial counsel testified that Appellant and Victim had no custody action pending at time of incident or when Commonwealth filed criminal charges against Appellant; counsel said no evidence supported Appellant's contention

_____

[2] The PCRA hearing testimony makes clear Appellant initially wanted to testify at trial but Appellant's mother objected. Trial counsel believed Appellant should testify because of the "he said/she said" nature of the case. Trial counsel advised Appellant how to testify in the event Appellant decided to take the stand. Prior to trial, it was "up in the air" regarding whether Appellant would testify. After the conclusion of the Commonwealth's case, trial counsel advised Appellant to testify, and Appellant heeded counsel's advice.

that Victim falsified allegations against him due to alleged custody dispute; trial counsel's strategy was to demonstrate Appellant and Victim engaged in consensual sex on day in question; counsel elicited testimony at trial showing Appellant and Victim were parents of child, were involved in relationship, and frequently had consensual sex; in light of counsel's trial strategy, his decision not to elicit testimony about alleged custody dispute was reasonable; as well, Appellant failed to show prejudice). Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2017

FILED

2016 AUG -4 PM 1: 12

PROTHONOTARY
SNYDER CO., PA

COMMONWEALTH OF
PENNSYLVANIA

vs.

MARQUALE J. SMITH,
            Defendant

:
:
:
:
:
:
:
:
:
:

IN THE COURT OF COMMON
PLEAS OF THE 17TH JUDICIAL
DISTRICT OF PENNSYLVANIA
SNYDER COUNTY BRANCH

CRIMINAL DIVISION
NO. CP-55-CR-0000164-2013

## 1925(a) OPINION

### HUDOCK, P.J. - August 4, 2016

### 1. Procedural History

On February 18, 2014, a jury convicted Petitioner Marquale Smith of Sexual Assault, Indecent Assault, and Unlawful Restraint. The jury found Mr. Smith Not Guilty of Rape and False Imprisonment. On May 23, 2014, this court sentenced Mr. Smith to an aggregate sentence of three to six years in a state correctional institution.

Mr. Smith did not file a post-sentence motion, but he did file a direct appeal. In connection with his direct appeal, Smith did not file a timely

65



Statement of Matters Complained Of. He did raise issues of sufficiency and weight of the evidence. On March 31, 2015, a panel of the Superior Court affirmed the judgment of sentence in a non-precedential decision at No. 1033 MDA 2014.

On March 4, 2016, Smith filed a Petition for Post-Conviction Relief in which he raised the issue of trial counsel's ineffectiveness and, in support of his petition, raised seven instances of counsel's ineffectiveness. This court held a hearing on Smith's petition on June 1, 2016. At the conclusion of the hearing, the court denied the petition. The reasons for the denial are set forth at pages 79-82 of the transcript of the hearing.

Smith filed his Notice of Appeal on June 23, 2016. Pursuant to an order of this court, Smith filed his Statement of Matters Complained of on Appeal in which he claimed this court erred in finding no prejudice to Smith in the lack of preparation for testifying and the failure to bring out custody issues related to Smith's child with the victim.

## 2. Discussion

### 2.1. Ineffective Assistance of Counsel- Failure to Prepare Petitioner to Testify

Section 9543(a) of the Post Conviction Relief Act ("Act") provides in pertinent part:

65A

> To be eligible for relief...the petitioner must plead and prove by a preponderance of the evidence all of the following: (1) that the petitioner has been convicted of a crime under the laws of this Commonwealth and is currently serving a sentence of imprisonment...(2) that the conviction resulted from...[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place, and (3) that the allegation of error has not been previously litigated or waived.

A PCRA defendant must demonstrate that trial counsel's representation was so deficient such that it undermined the truth-determining process rendering unreliable the adjudication of the Defendant's guilt.

Insofar as the Defendant is alleging ineffective assistance of trial counsel, he must rebut the presumption of professional competence and in doing so must demonstrate: 1) that the claim is of arguable merit; 2) that counsel had no reasonable basis for her action or inaction; and 3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Marinelli*, 810 A.2d 1257, 1267 (Pa. 2002). A failure to satisfy any prong of this test will require rejection of the claim. *Commonwealth v. Gribble*, 863 A.2d 455, 460 (Pa. 2004). If it is clear that a defendant has not demonstrated that counsel's act or omission adversely

65B

affected the outcome of the proceedings, the claim may be dismissed on this basis alone. *Id.*, citing *Commonwealth v. Albrecht.* 720 A.2d 693. 701 (Pa. 1998).

At the PCRA hearing, Mr. Smith testified that the first time that he was aware that he would testify at trial was when counsel called his name to testify. He also stated that he had no discussions with counsel before trial about testifying and he received no advice about how to testify. Smith's PCRA testimony about testifying at trial is set forth at PCRA pg. 8, line 12 to pg. 9, line 24.

Smith's testimony on this issue is contradicted by that of his mother and trial counsel. Sharon Cumberlander, Mr. Smith's mother, testified about meetings with trial counsel, some of which Mr. Smith attended, at which the issue was discussed. Miss Cumberlander did not believe that her son should testify. Her testimony on this issue is set forth at PCRA pg. 33, line 17-25; pg. 34 line1-6, and 24-25;pg 35, line 1-10;pg. 37, line 16-22; pg 39, line 15-25; and pg. 40, line 1-12.

Trial counsel's testimony on the issue appears at PCRA pg. 59, line 10 to pg. 60, line 15. In addition to a discussion of the general parameters of testifying at trial, Attorney Best also testified that it is the client's decision

*65C*

whether to testify at trial or not. As a practical matter, the final decision to testify is not made until the conclusion of the Commonwealth's case at trial.

This court found Mr. Smith's testimony not credible. It was obvious to this court that counsel and Mr. Smith had pre-trial discussions concerning both the decision to testify or not at trial and how to testify at trial.

At the PCRA hearing Smith did not offer any credible testimony on how his demeanor and testimony at trial affected the outcome of the trial. Thus, Mr. Smith has failed to meet his burden of proof on two of the three prongs of the test for ineffectiveness of counsel.

Smith did not meet his burden of proof that counsel did not prepare him for trial. Even if Mr. Smith met his burden on that issue, he has failed to show any prejudice.

## 2.2. Ineffective Assistance of Counsel – Failure to Bring Out Testimony Concerning Custody Issue

Smith's second complaint about trial counsel's stewardship concerns counsel's failure to elicit testimony about Smith's intention to seek custody of his and the victim's child. He claims that this would have established a motive for the victim to testify falsely.

Counsel explained that the theory of the defense was that his sex with the victim was consensual. Smith was in a relationship with the victim. He watched their child when she was at work. When the victim would pick up

65D

the child after work at Smith's house, they would have consensual sex. Counsel testified that at the time of the incident and the filing of the charges there was no custody dispute and no formal custody proceeding pending in court. He also testified that evidence on the custody dispute was not solid and that he could speculate on that dispute,

Again, this court found that Mr. Smith did not meet his burden of proof. It may be that this claim is of arguable merit. Counsel's strategy was that sex with the victim was consensual. Counsel elicited testimony that the parties were the parents of a child and that they were still in a relationship. Mr. Smith spent time with his child while the victim was at work and that they continued to have consensual sex on a frequent basis. Counsel's trial strategy not to bring up a custody dispute when no custody proceeding was pending and Smith had an ongoing relationship with his son without the necessity of a court order is, in this court's view, reasonable. Moreover, Smith did not meet his burden of proof that, but for counsel's failure to pursue the custody action issue, there is a reasonable probability that the outcome of the trial would have been different.

65E

## 3. Conclusion.

For the reasons set forth above and on the record of the PCRA hearing at pages 79-82 this court denied Mr. Smith's Petition for Post-Conviction Relief.

The Clerk of Courts is directed to submit the record to the Superior Court.

BY THE COURT:

_Michael T. Hudock_

MICHAEL T. HUDOCK, P.J.

cc:  Snyder County District Attorney
     James R. Protasio, Esquire, Counsel for Defendant
     Court Reporter
     Administrative Assistant/c

65F